IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENIZ CINAR AYDINER,                                    CV. 05-1535-MA

        Petitioner,                        OPINION AND ORDER

   v.

BERNIE GIUSTO, Multnomah
County Sheriff and Custodian
of Inverness Jail, HARDY
MYERS, Attorney General of the
State of Oregon,

        Respondents.


STEPHEN A. HOUZE
Suite 1190
1211 SW Fifth Avenue
Portland, Oregon 97204

DENNIS N. BALSKE
Suite 1025
621 S.W. Morrison
Portland, Oregon 97205

    Attorneys for Petitioner

///

///

///

///

1 -- OPINION AND ORDER

HARDY MYERS
Attorney General
YOULEE YIM YOU
DOUGLAS Y.S. PARK
Senior Assistant Attorneys General
Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301-4096

    Attorneys for Respondent Hardy Myers

AGNES SOWLE
County Attorney
for Multnomah County, Oregon
501 S.E. Hawthorne Blvd., Suite 500
Portland, Oregon 97214

    Attorney for Respondent Bernie Giusto

MARSH, Judge

    Petitioner, a pre-trial detainee at the Multnomah County Jail, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2241(c)(3). Petitioner is charged with multiple counts of aggravated murder, kidnaping in the second degree, sexual abuse in the first degree, attempted rape in the first degree, sodomy in the first degree, and burglary in the first degree. The aggravated murder counts carry the potential of the death penalty. Petitioner is scheduled to stand trial on February 27, 2006, in Multnomah County Circuit Court.

    Currently before the court are petitioner's habeas corpus petition, motion for stay of state court proceedings, and motion for expedited evidentiary hearing. For the reasons set forth below, I abstain from exercising jurisdiction over this proceeding.

## BACKGROUND

The following facts are undisputed. On May 29, 2001, Catherine Johnson was sexually assaulted and murdered. On or about February 5, 2003, Portland Police detectives obtained a DNA sample from petitioner, a Turkish citizen. Petitioner subsequently returned to Turkey.

On March 26, 2003, petitioner attempted to unlawfully re-enter the United States to join his wife, an American citizen. He was denied re-entry because he had overstayed a previous visa. Based upon his attempted re-entry, and because petitioner previously overstayed his visa for an extended period of time, he faced being barred from the United States for three to ten years. From March until late December, 2003, petitioner and his wife had ongoing contacts with the United States Embassy in Athens in an effort to obtain a visa for petitioner's return to the United States as a spouse of a United States citizen.

On June 3, 2003, Portland Police detectives received a report from the Oregon State Police Crime Lab indicating that petitioner's DNA samples were consistent with the DNA samples obtained at the crime scene. On June 4, 2003, Portland Police and Multnomah County Chief Deputy District Attorney Norman Frink determined that petitioner was in Istanbul, Turkey. Mr. Frink communicated with Department of Homeland Security (DHS) officials concerning petitioner's immigration status. He was advised that petitioner

3 -- OPINION AND ORDER

and his wife were making efforts to obtain petitioner's re-entry into the United States. The Portland Police, Mr. Frink, and DHS officials began monitoring the whereabouts of petitioner.

On November 7, 2003, a warrant was issued for petitioner's arrest. The warrant was kept under seal and was not entered into local, national, or international law enforcement databases. Turkish officials were not notified of the warrant.

On November 10, 2003, the Multnomah County District Attorney sent a letter to the Office of International Affairs of the Department of Homeland Security requesting that the Director grant petitioner "silent parole" which would permit petitioner to re-enter the United States.[1] In December, 2003, petitioner was advised by a staff officer at the United States Embassy in Ankara, Turkey, that he had been granted a waiver to re-enter the United States.

Petitioner purchased an airline ticket and sent a copy to the United States Embassy. Petitioner subsequently received his passport and a 3-day visa. Petitioner was advised that his visa would be extended upon his arrival in the United States. Unbeknownst to petitioner, federal immigration officials lodged a

---

[1] Pursuant to 8 U.S.C. § 1182(d)(5)(A) (2005), the Attorney General has the discretion to temporarily parole an alien into the United States for "significant public benefit."

detainer for petitioner's removal from the United States after his arrest, prosecution, and service of any sentence.

On January 16, 2004, petitioner returned to the United States. Upon his arrival, he was arrested and taken into custody. Petitioner was indicted on January 27, 2004, for the murder and sexual assault of Catherine Johnson, and re-indicted on March 5, 2004, to add three additional burglary counts.

On June 1, 2005, petitioner moved the state trial court to dismiss the charges on the basis that the prosecution violated the United States-Turkey Extradition Treaty in securing petitioner's presence in the United States. In support of his motion, petitioner sought to offer the testimony of seven DHS employees and three City of Portland Police Officers. The state trial judge denied the motion and declined to take testimony. Petitioner sought a writ of mandamus to compel the trial judge to permit petitioner to make an offer of proof, or to dismiss the prosecution for lack of personal jurisdiction. The Oregon Supreme Court summarily denied the petition.

On October 4, 2005, petitioner filed the instant proceeding, alleging that the prosecution's manipulation of the immigration process (1) violated the United States-Turkey Extradition Treaty; (2) violated petitioner's right to due process and to be free from cruel and unusual punishment; and (3) was undertaken in bad faith. Petitioner seeks a writ of habeas corpus directing the state court

to dismiss the criminal prosecution pending against him or grant such other relief to which he may be entitled.

Respondent moves the court to abstain from exercising jurisdiction over this proceeding or, in the alternative, to deny the habeas petition on the merits.

## **DISCUSSION**

Pursuant to 28 U.S.C. § 2241(c)(3), this court has habeas corpus jurisdiction to consider a state prisoner's pre-trial claim that he "is in custody in violation of the Constitution or laws or treaties of the United States". Stow v. Murashige, 389 F.3d 880, 886-87 (9th Cir. 2004). However, principles of comity and federalism require this court to abstain from deciding such a claim unless the prisoner demonstrates that (1) he has exhausted available state judicial remedies; and (2) "special circumstances" warrant federal intervention. Braden v. 30th Judicial Cir. Ct. of Kentucky, 410 U.S. 484, 489 (1973); Carden v. Montana, 626 F.2d 82, 83-84 (9th Cir.), cert. denied, 449 U.S. 1014 (1980). This policy of equitable restraint "is founded on the premise that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." Kugler v. Helfant, 421 U.S. 117, 124 (1975); Younger v. Harris, 401 U.S. 37, 44-45 (1971).

"Special circumstances" warranting federal intervention in a pending state prosecution exist "[o]nly in cases of proven

harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown." Perez v. Ledesma, 401 U.S. 82, 85 (1971); Kugler, 421 U.S. at 124; Carden, 626 F.2d at 84; see also Baffert v. California Horse Racing Bd., 332 F.3d 613, 621 (9th Cir.), cert. denied, 540 U.S. 1075 (2003).

Petitioner contends that federal intervention is warranted in the instant proceeding because (1) the prosecutor engaged in bad faith conduct in securing petitioner's presence in the United States unlawfully; and (2) the circumstances of this case are akin to the recognized double jeopardy exception to abstention.

I. **The Bad Faith Exception.**

Petitioner does not contend that the pending state prosecution was *undertaken* by state officials without hope of obtaining a valid conviction for murder. Rather, petitioner argues that the prosecutor's bad faith is evidenced by the fact that the prosecutor "was faced with a situation without a 'reasonable expectation of obtaining' a death sentence." Petitioner explains:

> This case has been driven from the outset by the state's desire to impose the death penalty on Mr. Aydiner. Newspaper reports disclose that Mr. Frink believed Mr. Aydiner was protected from eligibility for a death sentence by his Turkish citizenship and residence in Turkey. Mr. Frink believed that the only way he could obtain a death sentence, prohibited by Turkish law, was by keeping the aggravated murder indictment secret from Mr. Aydiner and Turkish officials, deceiving Mr. Aydiner

> into believing he could enter and remain in the United
> States pursuant to a visa that would supposedly be issued
> upon his return, using false information to obtain a copy
> of Mr. Aydiner's travel schedule, and leaving Mr. Aydiner
> to believe he had obtained a visa sanction waiver on his
> own, rather than by a concerted action taken by state and
> federal officials at Mr. Frink's direction."

Petitioner's Reply at 4.

As noted above, the U.S. Supreme Court has held that the "bad faith" exception to abstention "generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid *conviction*." Perez, 401 U.S. at 85 (emphasis added); Kugler, 421 U.S. at 126, n. 6; Carden, 626 F.2d at 84. Many courts, however, have examined the "overlap" between the concepts of "bad faith" and "harassment" and have applied the bad faith exception in the face of evidence rising to the level of probable cause. For example, in Phelps v. Hamilton, the Tenth Circuit held:

> The terms "bad faith" and "to harass" may have slightly different meanings, although they will, to a large degree, overlap. Ordinarily, a bad faith prosecution will not be predicated upon probable cause. However, if prosecutions are brought for the purpose of chilling or preventing a defendant from exercising his or her constitutional rights, this may constitute a harassing and/or bad faith prosecution, even though the charges are predicated on probable cause.

59 F.3d 1058, 1065 n.12 (10th Cir. 1995); see also Cullen v. Fleigner, 18 F.3d 96, 104 (2nd Cir.), cert. denied, 513 U.S. 985 (1994) (upon showing of retaliatory or bad faith prosecution, expectations for success of the party bringing the action need not be relevant); Fitzgerald v. Peek, 636 F.2d 943, 945 (5th Cir.),

8 -- OPINION AND ORDER

cert. denied, 452 U.S. 916 (1981) (defendant need not prove that the prosecution could not possibly result in a valid conviction in order to prove bad faith); Perez, 401 U.S. at 118 n. 1 (Brennan, J., concurring in part and dissenting in part) ("[b]ad-faith harassment" can take many forms including a pattern of discriminatory enforcement designed to inhibit the exercise of federal rights).

Under this more inclusive definition of "bad faith", courts have applied the exception if the state prosecution: (1) is frivolous or undertaken with no reasonably objective hope of success; (2) was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; or (3) was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions. Phelps, 59 F.3d at 1065. In the instant proceeding, petitioner asks this court to extend the "bad faith" exception beyond circumstances evidencing bad faith in *initiating* a criminal proceeding to encompass bad faith decisions concerning the severity of the penalty sought therein.

In Diamond "D" Construction Corp. v. McGowan, 282 F.3d 191, 199 (2nd Cir. 2002), the Second Circuit declined to extend the bad faith exception to decisions made during the course of an ongoing proceeding. The court explained that "[a] state proceeding that is

9 -- OPINION AND ORDER

legitimate in its purposes, but unconstitutional in its execution-even when the violations of constitutional rights are egregious-will not warrant the application of the bad faith exception." "[I]t is only when the state proceeding is brought with no legitimate purpose that th[e] state interest in correcting its own mistakes dissipates, and along with it, the compelling need for federal deference." Id.

I agree with the Second Circuit's decision in Diamond "D" Constr. and find its reasoning applicable to the present case. Petitioner offers no evidence of bad faith in the prosecution's decision to obtain an arrest warrant and to charge him with the murder and sexual assault of Catherine Johnson. Hence, there is no evidence which undermines the State of Oregon's legitimate interest in trying petitioner on those charges. Upon learning that the DNA at the crime scene was consistent with petitioner's DNA sample, the prosecution possessed a legitimate basis for charging petitioner with murder. The prosecution's alleged desire to seek the death penalty, and any decisions made in the course of obtaining petitioner's presence in the United States, does not undermine this legitimate state interest.

Petitioner's contention that the prosecution violated the United States-Turkey Extradition Treaty and/or his constitutional rights can be adequately addressed in the state court without irreparable harm to the petitioner. The cost, anxiety, and

10 -- OPINION AND ORDER

inconvenience of defending against a single prosecution are not by themselves an irreparable injury. Younger, 401 U.S. at 46; Phelps, 59 F.3d at 1065. Accordingly, I conclude that petitioner's assertion of the bad faith exception to abstention fails as a matter of law.

In so holding, I note that petitioner appears to supplement his bad faith argument in the portion of his reply brief discussing due process. In that section, petitioner argues that "the instant prosecution was brought with the *express intention* of deterring Mr. Aydiner from exercising his rights under the United States-Turkey Extradition Treaty" and, therefore, "involved 'harassment' as that term has been defined in the bad faith case law." Petitioner argues that absent the prosecutorial misconduct, petitioner could not have been subjected to any criminal prosecution in the United States. (Reply Brief at 19-20.)

To the extent that this argument is intended to support federal intervention, rather than simply the merits of his due process argument, I reject it. In the absence of any evidence supporting a finding of harassment, and in light of the circumstantial and DNA evidence possessed by the prosecution at the time the arrest warrant was issued, I conclude that petitioner has not made a colorable claim that a substantial motivating factor in *charging* him for the murder and sexual assault of Catherine Johnson was to deter him from exercising his treaty rights.

11 -- OPINION AND ORDER

///

///

**II. The Double Jeopardy Exception.**

The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution "protects an individual against being twice convicted for the same crime." Abney v. United States, 431 U.S. 651, 660 (1977). The Supreme Court has long recognized, however, that the Double Jeopardy Clause protects against more than just being subject to double punishments. Id. "It is a guarantee against being twice put to trial for the same offense." Id. at 661. Because the full vindication of the right not to be put to trial twice for the same offense necessarily requires intervention before trial, it presents an exception to the Younger abstention doctrine. Mannes v. Gillespie, 967 F.2d 1310, 1312 (9th Cir. 1992), cert. denied, 506 U.S. 1048 (1993); Wilson v. Czerniak, 355 F.3d 1151, 1157 (9th Cir. 2004).

Petitioner contends that his challenge to the personal jurisdiction of the state court is analogous to those cases in which individuals face double jeopardy violations. Petitioner's argument, however, digresses into his claim of bad faith:

> The double jeopardy analogy fits Mr. Aydiner's unique situation. But for the bad faith of the prosecution, Mr. Aydiner would not be exposed to a possible death sentence. If the state is compelled to comply with the treaty, he will neither be death eligible nor prosecutable in the United States. The state should be enjoined from prosecuting Mr. Aydiner here, and especially from pursuing a death sentence, because Mr. Aydiner's "right not to be subjected to a bad faith prosecution . . . cannot be vindicated by undergoing the prosecution." Just as the defendant who is facing

> exposure to a double jeopardy violation is permitted to obtain federal court intervention to prevent the injury from occurring, so too Mr. Aydiner is entitled to intervention to prevent the bad faith attempt to obtain a death sentence from going forward.

Petitioner's Supporting Memorandum at 8.

As already discussed above, petitioner has failed to demonstrate the type of bad faith prosecution sufficient to warrant federal intervention in a pending state prosecution. I decline to extend the double jeopardy exception to encompass the personal jurisdiction argument raised by petitioner. Unlike a double jeopardy claim, petitioner's claim that the prosecution violated the United States-Turkey Extradition Treaty, thereby destroying the state court's personal jurisdiction, "does not embody a right which is necessarily forfeited by delaying review until after trial." See Carden, 626 F.2d at 84; see also Frazer v. Superior Ct., 2001 WL 1456793 *6-*7 (N.D. Cal. Nov. 5, 2001) (declining to expand the double jeopardy exception to other "power to prosecute" claims).

In sum, petitioner has failed to demonstrate that "special circumstances" warrant federal intervention in his pending state criminal proceeding. There are sufficient review and appellate procedures at the state and federal levels to protect petitioner. If petitioner is convicted, he may seek appellate review by the Oregon Court of Appeals and Supreme Court. Petitioner may also seek state post-conviction relief. If petitioner does not prevail

at the state level, petitioner may again raise his treaty and constitutional claims in a federal habeas corpus proceeding.

Because I abstain from exercising jurisdiction, I do not address the merits of petitioner's claims that the prosecution violated the United States-Turkey Extradition Treaty, and petitioner's constitutional right to due process and to be free from cruel and unusual punishment.

### III. Request for Evidentiary Hearing.

Petitioner moves for an expedited evidentiary hearing in order to develop the facts concerning the state and federal involvement in his return to the United States. Petitioner's motion is denied because further factual development into the manner in which petitioner's presence in the United States was obtained will not support a colorable showing of bad faith as that exception is defined in the relevant case law discussed above. See Insyxiengmay v. Morgan, 403 F.3d 657, 670 (9th Cir. 2005) (federal petitioner seeking evidentiary hearing must make colorable allegations that, if proven, would entitle him to habeas relief); Earp v. Stokes, 423 F.3d 1024, 1032 n.4 (9th Cir. 2005) ("[i]n showing a colorable claim, a petitioner is "required to allege specific facts which, if true, would entitle him to relief").

///

///

///

## **CONCLUSION**

Based on the foregoing, this court abstains from exercising jurisdiction over this proceeding. Accordingly, petitioner's habeas corpus petition (#1), motion for stay of state court proceedings (#3), and motion for expedited evidentiary hearing (#5) are DENIED and this proceeding is DISMISSED, without prejudice.

IT IS SO ORDERED.

DATED this _29_ day of November, 2005.

>            _/s/  Malcolm F. Marsh_____
>            Malcolm F. Marsh
>            United States District Judge